47. Had the Defendants requested the right to resell Vantage's Proprietary Software, technology, and online services, Plaintiff Vantage would have sold these rights to each Defendant for a reasonable sum and still will.

48. By reselling Plaintiff Vantage's Proprietary Software, technology, and online services with out paying for a right to sell, the Defendants have been unjustly enriched and should be, in equity and good conscience, compelled to return said funds to Plaintiff Vantage.

49. Plaintiff Vantage is entitled to the reasonable value for the resale of its Proprietary Software, technology, and use of on-line services by the Defendants.

50. The reasonable value of right to resale Plaintiff Vantage's Proprietary Software, technology, and the right to use the on-line services of Plaintiff Vantage exceeds Seventy-Five Thousand Dollars ($75,000).

**WHEREFORE**, Plaintiff Vantage hereby demands judgment against each of the Defendants, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), for an award of its reasonable attorney's fees and costs, that judgment be entered for Plaintiff Vantage against each Defendant for punitive damages in view of their willful, intentional, malicious and egregious misconduct, and for such other and further relief as this Court deems just and appropriate.

### COUNT III
### THEFT OF SERVICES

51. Plaintiff Vantage incorporates the allegations set forth above in the above paragraphs as though fully set for herein at length.

52. A theft of services by the Defendants has occurred by their reselling Plaintiff Vantage's Proprietary Software, technology, and on-line services with out paying for a right to sell.

53. Plaintiff Vantage is entitled to the reasonable value for the resale of its Proprietary Software, technology, and for the use of on-line services by the Defendants.

54. The reasonable value of right to resale Plaintiff Vantage's Proprietary Software, technology, and the right to use the on-line services of Plaintiff Vantage exceeds Seventy-Five Thousand Dollars ($75,000).

**WHEREFORE**, Plaintiff Vantage hereby demands judgment against each of the Defendants, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), for an award of its reasonable attorney's fees and costs, that judgment be entered for Plaintiff Vantage against each Defendant for punitive damages in view of their willful, intentional, malicious and egregious misconduct, and for such other and further relief as this Court deems just and appropriate.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

55. Plaintiff Vantage incorporates the allegations set forth above in the above paragraphs as though fully set for herein at length

56. Plaintiff Vantage's Proprietary Software, technology, and on-line services, as created and developed by Plaintiff Vantage after significant experience in the field and research in the marketplace, constitute trade secrets under the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S.A. §5301, as a formula, pattern, device or compilation of information used by the Plaintiff Vantage in the online computerized testing industry and gives Plaintiff Vantage an oportunity to obtain an advantage over competitors in the provision of the Proprietary Software, technology, and on-line testing services who do not know or use them.

57. Plaintiff Vantage's Proprietary Software, technology, and on-line services were provided to the Defendants as a result of their confidential relationship.

58. Plaintiff Vantage protected its unique Proprietary Software, technology, and on-line services from the general public through the Software Product License and confidential negotiations with all parties involved in the provision of Plaintiff Vantage's Proprietary Software, technology and on-line services.

59. Plaintiff Vantage's Proprietary Software, technology, and on-line services have great independent value to the owner and competitors.

60. Plaintiff Vantage has expended great efforts and money in developing its Proprietary Software, technology and on-line services.

**WHEREFORE**, Plaintiff Vantage hereby demands judgment against each of the Defendants, jointly and severally, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), for an award of its reasonable attorney's fees and costs, that judgment be entered for Plaintiff Vantage against each Defendant for punitive damages in view of their willful, intentional, malicious and egregious misconduct, and for such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff Vantage hereby demands a trial by jury as to all issues.

**VANTAGE TECHNOLOGIES KNOWLEDGE ASSESSMENT, L.L.C.**

By: _____
KENNETH J. LaFIANDRA
General Counsel
Vantage Technologies Knowledge Assessment, L.L.C
6805 Route 202
New Hope, PA 18938
(267) 756-6973
*Attorney for Plaintiff*

Date: 5/1/09

12

# Exhibit A

# Software Product License Agreement for The ACCUPLACER Online™ System

This Software Product License Agreement (the "Agreement") is between the College Entrance Examination Board, New York, New York 10023-6917 (the "BOARD") and Vantage Technologies Knowledge Assessment ("VTKA") 110 Terry Drive, Yardley, PA 18940, and the licensing Institution (the "LICENSEE").

This Agreement contains the EXCLUSIVE TERMS AND CONDITIONS under which LICENSEE may use the ACCUPLACER® System, which includes the Computerized Placement Tests (Reading Comprehension, Sentence Skills, Arithmetic, Elementary Algebra, College-Level Mathematics, Levels of English Proficiency™ (LOEP™) Reading Skills, Sentence Meaning, and Language Use; the Computerized Placement Management and Advising Software (CPAMS™); and the School to College Placement Articulation Software Service™ (PASS™) and all associated materials; and test questions (such CPTs™, CPAMS, and PASS, associated materials, and test questions hereinafter collectively referred to as the "PRODUCT").

1. Ownership and Proprietary Rights. LICENSEE understands and acknowledges that the BOARD and VTKA hold all title to and proprietary rights, including trade secret, trademark, and copyright, in the PRODUCT. Subject to the terms of this Agreement, the BOARD and VTKA grant to LICENSEE a nonexclusive, nontransferable license to use the PRODUCT during the term of this Agreement.

2. Conditions of the PRODUCT. LICENSEE understands and acknowledges that ACCUPLACER may only be administered under proctored conditions. Examinees must be monitored at all times and an authorized test administrator from the institution must be present on-site during any and all administrations of an ACCUPLACER test.

3. Use of the PRODUCT. Except as may be expressly permitted by the terms of the accompanying Program User Guides, which are hereby incorporated by reference and made a part of this Agreement, LICENSEE shall only use the PRODUCT on a campus of the licensing institution or other location while under the direct control of the licensing institution. LICENSEE SHALL NOT COPY, REPRODUCE, MODIFY, REVERSE ENGINEER, OR DISASSEMBLE THE PRODUCT, IN WHOLE OR IN PART, IN ANY FORM WHATSOEVER, NOR SHALL LICENSEE DISCLOSE OR OTHERWISE MAKE AVAILABLE THE PRODUCT, IN WHOLE OR IN PART, TO ANY THIRD PARTY.

4. Limited Warranty. The BOARD and VTKA warrant to LICENSEE that the PRODUCT is free from defects in materials and workmanship and that the PRODUCT, under normal use and operation, will operate in accordance with the descriptions contained in the manuals supplied to LICENSEE with the PRODUCT. VTKA's AND THE BOARD'S TOTAL LIABILITY WITH RESPECT TO THIS WARRANTY AND LICENSEE'S SOLE REMEDY FOR BREACH OF THIS WARRANTY SHALL BE LIMITED TO SCORE CORRECTION OR TEST RETAKE AT NO ADDITIONAL CHARGE TO LICENSEE. NO OTHER WARRANTIES, EXPRESS OR IMPLIED, SHALL APPLY, INCLUDING, BUT NOT LIMITED TO, FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY. IN NO EVENT, HOWEVER, SHALL THE BOARD or VTKA BE LIABLE FOR SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE USE OF THE PRODUCT. (Some state laws do not allow the exclusion or limitation of implied warranties or liability for incidental or consequential damages, so portions of this Paragraph 3 may not apply to the license granted hereunder.)

5. Assignment. This Agreement and the license granted hereunder may not be assigned, sublicensed, or transferred by LICENSEE to any other party.

6. Term. This Agreement and the license granted hereunder will become effective on the date of LICENSEE's first use of the PRODUCT. This Agreement shall remain in effect for as long as LICENSEE remains a participant in the ACCUPLACER Online Program and has paid all participation, pretest, posttest, and special fees in accordance with the rates and terms then in effect (as stated in the then-current ACCUPLACER Online Price List).

7. Termination. The Board may terminate this Agreement upon written notice to LICENSEE in the event that LICENSEE breaches or fails to comply with any term or condition of this Agreement. LICENSEE may terminate this Agreement at any time during the term hereof by providing written notice to the BOARD.

8. Fees. All ACCUPLACER Online participation fees, testing fees, special fees, and CPAMS fees payable by LICENSEE in consideration of its license to use the PRODUCT shall be paid by LICENSEE in accordance with the terms of the then-current ACCUPLACER Online Price List.

9. Governing Law. This Agreement shall be construed under the laws of the State of New York. In the event that any provision of this Agreement is deemed invalid or unenforceable, the other provisions of this Agreement shall continue in full force and effect.

10. Other. This Agreement and the ACCUPLACER Online Price List constitutes the entire understanding between the BOARD, VTKA, and LICENSEE with respect to the subject matter hereof and supersedes any prior agreements, understandings, negotiations, or offers between them. Any modification or amendment of the terms of this Agreement shall not be binding upon either party unless such amendment or modification is in a written form signed by an authorized representative of each party.



CollegeBoard
connect to college success™